# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

MICHAEL SWEEZY,

      Petitioner,

v.                               Case No. 8:20-cv-1623-TPB-SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Michael Sweezy, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Having considered the petition, Respondent's response in opposition (Doc. 7), and Sweezy's reply (Doc. 12), the Court **DENIES** the petition.

## **Procedural History**

Sweezy was charged with one count of aggravated battery causing great bodily harm, one count of false imprisonment, and two counts of aggravated assault with a deadly weapon. (Doc. 7-2, Ex. 7.) Following a jury trial, Sweezy was convicted of (1) aggravated battery and (2) assault as a lesser included offense of one of the aggravated assault counts. (*Id.*, Ex. 10.) He was acquitted of false imprisonment and the other aggravated assault count. (*Id.*) The state trial court sentenced Sweezy to fifteen years'

imprisonment on the aggravated battery count and time served on the assault count. (*Id.*, Ex. 12.) The state appellate court *per curiam* affirmed the convictions. (*Id.*, Ex. 21.)

Sweezy filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, followed by several amended motions. (Doc. 7-3, Exs. 23, 26, 29, 32.) The state postconviction court ultimately denied relief on all grounds. (*Id.*, Exs. 25, 28, 31, 34, 36, 38.) The state appellate court *per curiam* affirmed the denial of postconviction relief. (*Id.*, Ex. 43.)

## **Factual Background and Trial Testimony**[1]

This case arises from a physical altercation between Sweezy and his ex-girlfriend, Connie Kolk. In late 2014, Sweezy and Kolk broke up. By early February 2015, Sweezy was living in an RV behind his friend's house in Polk County, and Kolk was living with her parents. Around this time, Kolk regularly used methamphetamine.

Kolk testified at trial that, on the evening of February 9, 2015, she visited the RV after Sweezy and his friends "repeatedly" called her. (Doc. 7-2, Ex. 9, pp. 279-80.) When Kolk arrived, Sweezy said he would "leave [her] alone" if she "agreed to talk to him." (*Id.*, p. 280.) Kolk sat down on the couch. Sweezy began playing games on his laptop at the other end of the sofa. Kolk

---

[1] The factual summary is based on the trial transcript and appellate briefs.

eventually told Sweezy that she would leave if they "weren't going [to] talk." (*Id.*, p. 281.)

At this point, Sweezy began yelling at Kolk. According to Kolk, she stood up, walked to the door, and told Sweezy she was leaving. Kolk testified that Sweezy grabbed her from behind, "snatched [her] out of the doorway," and threw her on the couch, causing her to hit her head on the "wooden end" of the sofa. (*Id.*, pp. 282-83.) Sweezy then tried to pin her down by twisting her hands and grabbing her head. He also told her she could not leave. During the scuffle, Kolk retrieved a "razor knife" from her purse and cut Sweezy with it. (*Id.*, p. 284.) Sweezy became "enraged." (*Id.*) He choked Kolk, pulled her hair, threw her on the floor, and got on top of her. While she was pinned down, Sweezy punched her in the head multiple times, causing her to black out.

When she came to, Kolk tried to leave the RV, but Sweezy picked her up and threw her on the bed. Kolk spent most of the next day in bed, going in and out of consciousness. At the time, her head hurt so much that she "couldn't even lay it down." (*Id.*, p. 287.) When she screamed, Sweezy told her to "shut up." (*Id.*) He also said that she "was to stay in the bed until [she] got better or until [she] was dead." (*Id.*) The next day, Kolk tried to leave again, but Sweezy said she was "not going to go home." (*Id.*) At some point, Kolk

testified, Sweezy threatened her with a "carpenter's level" and a knife. (*Id.*, pp. 287-89.)

Sweezy did not fall asleep until February 12. That morning, Kolk woke up, saw that Sweezy was sleeping, and snuck out of the RV. She ran to the nearest gas station and called her family. Kolk's sister picked her up at the gas station, took her home, and called the police. An ambulance took Kolk to the hospital, where she received treatment for her injuries, which included multiple facial fractures.

Sweezy testified at trial and offered a different account of the incident. According to him, Joshua Wright—the owner of the property where the RV was parked—visited the RV shortly after Kolk arrived. During his visit, Wright told Sweezy that he "wanted everybody to clear out." (*Id.*, p. 443.) Sweezy then told Kolk that "she had to go." (*Id.*) According to Sweezy, Kolk became angry, got off the couch, and "cut [him] with a razor knife." (*Id.*, pp. 444-45.) When Sweezy noticed he was bleeding, Kolk allegedly "tried to hit [him] again." (*Id.*, p. 446.) Sweezy "smacked" her because he "didn't want to be cut again." (*Id.*, pp. 446-47.) Then, to get the knife out of Kolk's hand, Sweezy grabbed her and "took her to the floor." (*Id.*, pp. 450-51.) Sweezy ultimately got hold of the knife and threw it down the hallway.

Sweezy also claimed that, following the altercation, he never told Kolk she could not leave, he did not threaten her with a knife or a carpenter's

level, and he left her alone in the RV several times without locking the door.
Sweezy acknowledged that he did not call the police after the incident, but he
claimed to be worried that the two of them would get in trouble if law
enforcement got involved. According to Sweezy, Kolk was "sleeping for days"
after the altercation because she was "coming down off of meth." (*Id.*, p. 457.)
Sweezy also testified that he "offered [Kolk] food and she wouldn't take it."
(*Id.*)

## Standards of Review

**AEDPA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs
this proceeding. *Carroll v. Sec'y, DOC*, 1354 F.3d 1354, 1364 (11th Cir. 2009).
Habeas relief can be granted only if a petitioner is in custody "in violation of
the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).
Section 2254(d) provides that federal habeas relief cannot be granted on a
claim adjudicated on the merits in state court unless the state court's
adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Sweezy's convictions, as well as the denial of postconviction relief, without discussion. These decisions warrant

deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *See Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

**Ineffective Assistance of Counsel**

Sweezy alleges some claims involving ineffective assistance of trial counsel. Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.

Sweezy must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had

no effect on the judgment." *See id.* at 691. To demonstrate prejudice, Sweezy must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential.") (internal quotation and citation omitted). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

**Exhaustion of State Remedies; Procedural Default**

A federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001); *see also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (stating that unexhausted claims that "would now be procedurally barred in state court due to a state-law procedural default" provide no basis for federal habeas relief).

A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169

F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

<u>Analysis</u>

**Ground One**

Sweezy contends that the trial court erred in denying his motion for judgment of acquittal on the aggravated battery count. According to him, the evidence at trial "failed to prove beyond a reasonable doubt that [he] was not acting in self-defense when he struck [Kolk] in the face." (Doc. 1-1, p. 3.)

Sweezy's claim is not cognizable on federal habeas review because it rests on an alleged misapplication of Florida law. A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Accordingly, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "[W]hether the state's evidence is sufficient to withstand a motion for judgment of acquittal under Florida law is solely a state law matter. State courts are the final

arbiters of state law, and federal habeas courts should not second-guess them on such matters." *McDonald v. Sec'y, Dep't of Corr.*, No. 8:18-cv-973-EAK-CPT, 2018 WL 10517118, at *3 (M.D. Fla. Oct. 31, 2018). Because Sweezy does not claim that the denial of his motion for judgment of acquittal violated his rights under the federal constitution, he is not entitled to relief on Ground One.

Even if the Court liberally construed Sweezy's petition as raising a federal constitutional challenge to the sufficiency of the evidence, he still would not be entitled to relief. First, Sweezy failed to exhaust this claim. Proper exhaustion requires a petitioner to "make the state court aware that the claims asserted present federal constitutional issues." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). A petitioner must do more, however, than "scatter some makeshift needles in the haystack of the state court record." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005). Moreover, a petitioner "does not 'fairly present' a claim to a state court if that court must

read beyond a petition or a brief" to find the "federal claim." *Baldwin*, 541 U.S. at 32.

Sweezy failed to squarely present his federal constitutional claim on direct appeal. In his initial brief, Sweezy argued that, because "[t]he evidence failed to prove beyond a reasonable doubt that [he] did not act in self-defense," the trial court "erred in denying the motion for judgment of acquittal on" the aggravated battery count. (Doc. 7-2, Ex. 19, p. 21.) But Sweezy did not cite the United States Constitution or any other source of federal law. Nor did he "label[] the claim 'federal.'" *See Baldwin*, 541 U.S. at 32. Instead, Sweezy relied entirely on Florida caselaw to support his argument that the evidence was insufficient to support his conviction. Because Sweezy "did not raise any federal claims or cite to any federal cases in state court when presenting his argument on the sufficiency of the evidence," he "failed to fairly present his federal sufficiency-of-the-evidence claim to the Florida state courts and thus did not exhaust his state court remedies as to that claim." *See Cascante v. Florida*, 816 F. App'x 429, 431 (11th Cir. 2020); *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 459 (11th Cir. 2015) (holding that federal sufficiency-of-the-evidence claim was not exhausted because petitioner "asserted in his [state appellate] brief that his conviction rested on insufficient evidence, without clarifying whether he intended to bring a federal or a state sufficiency of the evidence claim").

Sweezy cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within thirty days of the rendition of a sentence). As a result, this claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138 ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). And because Sweezy has not shown that an exception applies to overcome the default, the claim is barred from federal habeas review.[2]

Even if Sweezy had exhausted a federal constitutional challenge to the sufficiency of the evidence, he would not be entitled to relief. Under the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), a court reviewing a challenge to the sufficiency of the evidence must evaluate whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements

---

[2] Sweezy appears to rely on the "actual innocence" exception to excuse his procedural default. (Doc. 12, p. 2.) To overcome a procedural default through a showing of actual innocence, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," which establishes that "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Sweezy presents no new evidence of innocence. Instead, he simply asserts that he "acted in self-defense and is innocent of the alleged charges." (Doc. 12, p. 2.) Accordingly, Sweezy's assertion of actual innocence does not excuse his procedural default.

of the crime beyond a reasonable doubt." The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Under *Jackson*, the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." *Id.* at 326. If the record contains facts supporting conflicting inferences, the jury is presumed to have "resolved any such conflicts in favor of the prosecution." *Id.*

Consistent with AEDPA, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

Sweezy fails to show that the state court's rejection of his sufficiency challenge was "objectively unreasonable." As noted above, Sweezy contends that because the prosecution failed to disprove his claim of self-defense beyond a reasonable doubt, the evidence was insufficient to support his aggravated battery conviction. Aggravated battery occurs when a defendant, "in committing battery," "[i]ntentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement." Fla. Stat. § 784.045(1)(a). A defendant commits simple battery when he "[a]ctually and

intentionally touches or strikes another person against the will of the other"
or "[i]ntentionally causes bodily harm to another person." Fla. Stat. §
784.03(1)(a).

"[A] defendant is justified in using non-deadly force, which is force not
likely to cause death or great bodily harm, to the extent reasonably necessary
to defend oneself against the imminent use of unlawful force." *Croft v. State*,
291 So. 3d 1285, 1288 (Fla. 5th DCA 2020) (citing Fla. Stat. § 776.012). "If,
however, the defendant initially provokes the use of force against himself
(i.e., is the initial aggressor), he has the duty to exhaust every reasonable
means to escape the danger or to withdraw from physical contact with the
assailant and clearly indicate that he wants to withdraw and stop the use of
[] force before meeting [] force with [] force." *Jackson v. State*, 180 So. 3d
1103, 1106 (Fla. 5th DCA 2015).

"When self-defense is asserted, the defendant has the burden of
producing enough evidence to establish a prima facie case demonstrating the
justifiable use of force." *Falwell v. State*, 88 So. 3d 970, 972 (Fla. 5th DCA
2012). "Once the defendant makes a prima facie showing of self-defense, the
State has the burden of proving beyond a reasonable doubt that the
defendant did not act in self-defense." *Id.* Thus, "[t]he burden of proving guilt
beyond a reasonable doubt, including the burden of proving that the

defendant did not act in self-defense, never shifts from the State to the defendant." *Id.*

Here, a rational jury could find beyond a reasonable doubt that Sweezy did not act in self-defense when he punched Kolk in the face. According to Kolk, Sweezy was the initial aggressor. Kolk claimed that when she got up to leave the RV, Sweezy threw her down on the couch and tried to pin her down by twisting her hands and grabbing her head. Kolk defended herself by cutting Sweezy with a knife. This enraged Sweezy. He threw Kolk on the floor, pinned her down, and punched her in the head several times, causing her to black out and sustain multiple facial fractures.

Although Sweezy offered a different version of events at trial, the jury is presumed to have resolved evidentiary conflicts "in favor of the prosecution." *See Jackson*, 443 U.S. at 326. Accepting Kolk's account as true, a rational jury could conclude beyond a reasonable doubt that (1) Sweezy was the initial aggressor, (2) after Kolk cut Sweezy in self-defense, he did not "exhaust every reasonable means to escape the danger or to withdraw from physical contact with" her, and (3) as a result, Sweezy was not justified in responding to Kolk's use of force by punching her until she blacked out and sustained facial fractures. *See Jackson*, 180 So. 3d at 1106. Thus, the evidence was sufficient to refute Sweezy's claim of self-defense and sustain his conviction for aggravated battery.

**Ground Two**

Sweezy contends that the trial court erred in allowing the prosecution to introduce an email from Kolk "in which she stated that [Sweezy] liked to 'beat up defenseless girls.'" (Doc. 1-1, p. 4.) According to Sweezy, the email constituted impermissible "prior bad act evidence" for which notice was not provided. (*Id*.) Sweezy argues that admission of the email "denied [him] his due process rights under the Fourteenth Amendment." (Doc. 12, p. 3.)

Respondent is correct that Sweezy failed to exhaust this claim. "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan v. Henry*, 513 U.S. 364, 366 (1995). On direct appeal, Sweezy argued that "a new trial [was] required" due to the trial court's allegedly erroneous admission of the email. (Doc. 7-2, Ex. 19, p. 26.) But Sweezy couched his argument entirely in terms of state law. He cited only state rules of evidence and state-court opinions, focusing in particular on Florida case law concerning admission "of collateral crimes, wrongs, or acts committed by the defendant." (*Id.*, p. 24.) Thus, Sweezy failed to "make the state court aware that the claim[] [he] asserted present[ed] federal constitutional issues." *See Jimenez*, 481 F.3d at 1342.

Sweezy cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3). As a result, Ground Two is procedurally defaulted. *See Smith*, 256 F.3d at 1138. And because Sweezy has not shown that an exception applies to overcome the default, Ground Two is barred from federal habeas review.

**Ground Three**

Sweezy argues that the trial court erroneously allowed the prosecutor to ask a question that "was fairly susceptible as a comment on" his right to remain silent. (Doc. 1-1, p. 5.) Specifically, on direct examination of a "police detective," the prosecutor asked whether Sweezy "ever called 911." (*Id.*) According to Sweezy, the "gist" of the question was that if he "was the victim of a crime, rather than the perpetrator of one, he would [have] called 911 to report [Kolk] for cutting him with the razor." (*Id.*) The detective testified that Sweezy did not call 911, and Sweezy's counsel objected on the grounds that the question was a "comment[] on his right to remain silent." (*Id.*) The court overruled the objection.

Respondent correctly contends that Sweezy failed to exhaust this claim. "[A] petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim." *Preston*, 785 F.3d at 458. Accordingly, "a petitioner [does] not satisfy the exhaustion requirement merely by presenting the state court with all the

facts necessary to support the claim, or by making a somewhat similar state-law claim." *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351-52 (11th Cir. 2012). Here, Sweezy did not argue on direct appeal that the prosecutor's question violated his *federal* constitutional rights. Nor did he cite any provision of the federal constitution. Instead, Sweezy claimed that "[t]he use of [his] silence as substantive evidence of guilt violated his right against self-incrimination under Article I, section 9 of the Florida Constitution." (Doc. 7-2, Ex. 19, p. 29.) Thus, Sweezy did not "put the state court on notice that he intended to raise a federal claim." *See Preston*, 785 F.3d at 457.[3]

Sweezy's failure to couch his claim in federal constitutional terms deprived the state court of "the opportunity to apply controlling legal principles to the facts bearing upon [the] claim." *See Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004). The "controlling legal principles" here differed depending on whether the claim arose under state or federal law. As the Florida Supreme Court has explained, "the privilege against self-incrimination provided in the Florida Constitution offers *more* protection than the right provided in the Fifth Amendment to the United

---

[3] Sweezy cited a single federal case in this section of his initial brief—*United States v. Hale*, 422 U.S. 171 (1975). But that decision did not rest on any provision of the federal constitution. Instead, the Supreme Court in *Hale*, "*without reaching the constitutional question*, exercised its supervisory authority over lower federal courts to prohibit cross-examination of a defendant with respect to post-arrest silence." *United States v. Blankenship*, 746 F.2d 233, 237 (5th Cir. 1984) (emphasis added). Accordingly, Sweezy's citation to *Hale* was insufficient to inform the state court that his claim rested on federal constitutional grounds.

States Constitution." *State v. Horwitz*, 191 So. 3d 429, 439 (Fla. 2016). For this reason, the state court did not have a "meaningful opportunity" to address Sweezy's federal claim. *McNair*, 416 F.3d at 1302.

Sweezy cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3). As a result, Ground Three is procedurally defaulted. *See Smith*, 256 F.3d at 1138. And because Sweezy has not shown that an exception applies to overcome the default, Ground Three is barred from federal habeas review.

Even if Sweezy had exhausted this claim, he would not be entitled to relief. Sweezy contends that, by asking the detective whether Sweezy called 911 after the altercation, the prosecutor improperly commented on his right to remain silent. To prevail on this claim, Sweezy must show that the trial court's decision to overrule his objection to the question was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014). Accordingly, "it is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122; *see also Reese*

*v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1288 (11th Cir. 2012) ("The Supreme Court has reiterated, time and again, that, in the absence of a clear answer—that is, a holding by the Supreme Court—about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law.").

The Supreme Court has never "squarely established" that the Fifth Amendment precludes a prosecutor from using a defendant's pre-arrest silence as substantive evidence of guilt. *Knowles*, 556 U.S. at 122. Indeed, the Supreme Court has expressly "le[ft] open the question of whether, in line with the Fifth Amendment, a prosecutor may comment on [a] defendant's pre-custodial silence." *United States v. Zarauskas*, 814 F.3d 509, 515 (1st Cir. 2016) (citing *Salinas v. Texas*, 570 U.S. 178 (2013)); *see also Mercado v. Sec'y, Fla. Dep't of Corr.*, No. 6:19-cv-1755-PGB-LRH, 2022 WL 2103057, at *14 & n.3 (M.D. Fla. Feb. 7, 2022) (noting that "the Supreme Court has not yet decided" whether "the government may comment on a defendant's non-custodial, pre-*Miranda* silence"). Notably, in the Eleventh Circuit, "[t]he government may comment on a defendant's silence if it occurred prior to the time that he is arrested and given his *Miranda* warnings." *United States v. Rivera*, 944 F.2d 1563, 1568 (11th Cir. 1991).

Here, Sweezy's silence—that is, his failure to call 911 in the aftermath of the altercation—"occurred prior to the time that he [was] arrested and

given his *Miranda* warnings." *Id.* Because the Supreme Court has never

clearly established that the Fifth Amendment forbids the use of such silence

as substantive evidence of guilt, Sweezy is not entitled to relief on Ground

Three.

**Ground Four**

Sweezy contends that "[a] new trial is required" because the

prosecution asked him questions on cross-examination that "shifted the

burden of proof" to him. (Doc. 1-1, p. 6.) During direct examination, Sweezy

testified that, after the altercation, he walked to the Dollar General store and

bought some items. He also testified that, around the time of the incident,

Kolk would respond to his emails by calling him. On cross-examination, the

prosecutor asked whether the Dollar General store "give[s] you receipts."

(Doc. 7-2, Ex. 9, p. 475.) Sweezy answered yes. The prosecutor then asked:

"But you don't have that here today, do you?" (*Id.*) Sweezy said he did not.

The prosecutor also asked Sweezy whether Kolk's alleged phone calls would

"show up on your phone." (*Id.*) Sweezy said they would. The prosecutor asked:

"But we don't have that here today, do we?" (*Id.*) Sweezy acknowledged that

the records were not in evidence. According to Sweezy, this line of

questioning "led the jury to believe that he had an obligation to prove his

innocence." (Doc. 1-1, p. 6.)

Respondent correctly contends that Sweezy failed to exhaust this claim. On direct appeal, Sweezy argued that the prosecutor "led the jury to believe that [he] had an obligation to prove his innocence" by asking him "twice about his failure to produce physical evidence to support his testimony." (Doc. 7-2, Ex. 19, p. 39.) In this section of his brief, however, Sweezy did not cite any provision of the federal constitution. Nor did he rely on any federal cases. Instead, Sweezy argued that the prosecution's questions constituted "fundamental error." (*Id.*, p. 37.) "[F]undamental error . . . is an issue of state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1299 (11th Cir. 2017). Moreover, although Sweezy argued in passing that "[t]he error [was] equivalent to a denial of due process," (Doc. 7-2, Ex. 19, p. 37), the law is clear that "one passing reference to the Due Process Clause . . . is insufficient to notify [a] state court that [a petitioner] [is] raising a federal claim." *Copeland v. Fla. Dep't of Corr. Sec'y*, 851 F. App'x 927, 931 n.1 (11th Cir. 2021); *see also Means v. Sec'y, Dep't of Corr.*, No. 1:14-cv-230-WTH-GRJ, 2018 WL 992027, at *1 (N.D. Fla. Feb. 20, 2018) ("The mere incantation of constitutional buzzwords, unaccompanied by any federal constitutional analysis, does not suffice to carry the burden of demonstrating fair presentment of a federal claim.").

Sweezy cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3). As a result, Ground Four is procedurally defaulted. *See Smith*, 256 F.3d at 1138.

And Because Sweezy does not show that an exception applies to excuse the default, Ground Four is barred from federal habeas review.

Even if the Court could review this claim on the merits, Sweezy would not be entitled to relief. "On collateral review, a federal constitutional error is harmless unless there is 'actual prejudice,' meaning that the error had a 'substantial and injurious effect or influence' on the jury's verdict." *Burns v. Sec'y, Fla. Dep't of Corr.*, 720 F.3d 1296, 1305 (11th Cir. 2013) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). "To show prejudice under *Brecht*, there must be more than a reasonable possibility that the error contributed to the conviction or sentence." *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1114 (11th Cir. 2012). "[A] federal court may deny habeas relief based solely on a determination that the constitutional error is harmless under the *Brecht* standard." *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1308 (11th Cir. 2012).

Even assuming that the prosecutor's questions improperly shifted the burden of proof to Sweezy, he cannot show "actual prejudice" under *Brecht*. After closing arguments, the trial court properly instructed the jury on the prosecution's burden of proof, explaining that (1) the presumption of innocence "stays with the defendant as to each material allegation in the Information through each stage of the trial unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt"; (2) "the

State has the burden of proving [that] the crime with which the defendant is charged was committed and that the defendant is the person who committed the crime"; and (3) "[t]he defendant is not required to present evidence or prove anything." (Doc. 7-2, Ex. 9, pp. 555-56.) "[T]he prejudice from the [questions] of a prosecutor which may result in a shifting of the burden of proof can be cured by a court's instruction regarding the burden of proof." *United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992).

Moreover, the prosecution presented substantial evidence of Sweezy's guilt. Kolk testified that after she attempted to defend herself from Sweezy's unprovoked attack, he pinned her down and punched her in the head several times, causing her to black out and sustain multiple facial fractures. Constitutional error "is likely to be harmless under the *Brecht* standard where[, as here,] there is significant corroborating evidence, or where other evidence of guilt is overwhelming." *Trepal*, 684 F.3d at 1114; *see also Yarn v. Sec'y, Dep't of Corr.*, No. 8:15-cv-135-MSS-TBM, 2018 WL 10687975, at *6 (M.D. Fla. Mar. 13, 2018) (holding that petitioner could not "establish actual prejudice" under *Brecht* because "substantial evidence was adduced at trial from which the jury could find [him] guilty"). Furthermore, the prosecution did not refer to Sweezy's failure to produce corroborating physical evidence during closing argument. (Doc. 7-2, Ex. 9, pp. 505-17; 536-43.)

Because any burden-shifting caused by the prosecution's questions was harmless under *Brecht*, Sweezy is not entitled to relief on Ground Four.

**Ground Five**

Sweezy contends that the cumulative effect of the errors described in the previous grounds deprived him of a fair trial. Respondent argues that Sweezy failed to exhaust this claim. The Court need not resolve this issue, because even assuming Sweezy exhausted his cumulative-error claim, it fails on the merits.

"Under the cumulative-error doctrine, a sufficient agglomeration of otherwise harmless or nonreversible errors can warrant reversal if their aggregate effect is to deprive the defendant of a fair trial." *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014). A cumulative-error claim "must fail," however, where none of the "individual claims of error" has "any merit." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Here, there are no individual errors to accumulate, so Sweezy's cumulative-error claim necessarily fails. *See Otero v. Sec'y, Dep't of Corr.*, No. 8:19-cv-39-SDM-AEP, 2022 WL 4095069, at *8 (M.D. Fla. Sept. 7, 2022) ("Because ground one is procedurally barred from federal review and ground two lacks merit, [petitioner] proves no error to accumulate to show cumulative prejudicial effect."). Thus, Sweezy is not entitled to relief on Ground Five.

**Ground Six**

Sweezy contends that his trial counsel, Blair Allen, was ineffective for failing to advise him of the maximum sentence he faced if he proceeded to trial. According to Sweezy, counsel informed him of "the State's offer of time served followed by [three] years [of] probation," but she did not tell him "the maximum sentence he faced" if he rejected the offer and went to trial. (Doc. 1-1, p. 8.) Sweezy argues that if he had known he faced a fifteen-year statutory maximum, he would have accepted the State's offer.

The state court denied this claim after holding an evidentiary hearing:

> After reviewing the relevant pleadings, court files and applicable law, and after observing and evaluating the testimony, demeanor, credibility and veracity of the witnesses at the evidentiary hearing, the Court finds that the Defendant was informed of the maximum possible penalty he faced. From the first Information, the Defendant was charged with Aggravated Battery, bodily harm, a second degree felony punishable by up to fifteen years in Florida State Prison. When Mr. Long [Defendant's initial attorney] first met with Defendant, he did not have the Information with him and instead went over the charges listed on the Probable Cause affidavit which listed several incidents of domestic violence. Mr. Long testified that he sent discovery to the Defendant and that the discovery packet included the scoresheet with the maximum sentence. At no point during Mr. Long's representation was the Defendant interested in a plea.
>
> Ms. Allen testified that in September 2015 she discussed the maximum sentences in the original Information which included Aggravated Battery, bodily harm. Defendant was only interested in a plea if the State agreed to reduce the charge to misdemeanor battery and allow him a time served sentence. Ms. Allen testified that she did not recall exactly when the Amended Information

was filed. However, according to the October 26, 2015 transcript, it appears that the Amended Information was addressed that day in court. Ms. Allen testified that she would have reviewed the Amended Information with the Defendant in the holding cell and would have gone over the maximum penalties. During the October hearing, Ms. Allen informed the Court that the Defendant was aware of the maximum penalties. The Court even told the Defendant the maximum he faced. During that hearing, upon rejection of the offer by the Defendant, the State withdrew all offers.

The Court finds credible Ms. Allen's testimony that she would have discussed and reviewed the Amended Information with the Defendant including the maximum penalties. Ms. Allen made that same representation to the Court on October 26, 2015. The Court further finds credible the testimony that the Defendant was not interested in accepting the State's offers. The Defendant has failed to establish deficient performance or prejudice.

(Doc. 7-3, Ex. 38, pp. 2-3 (record citations omitted).)

The state court reasonably rejected Sweezy's ineffective assistance claim. "Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010). "An attorney's failure to properly advise his client about sentencing exposure may constitute ineffective assistance of counsel." *United States v. Roberts*, No. 4:03-cr-045-SPM, 2008 WL 216317, at *5 (N.D. Fla. Jan. 24, 2008). But "[w]ithout evidence that [counsel] gave incorrect advice or evidence that he failed to give material advice, [a petitioner] cannot establish that [counsel's] performance was deficient." *Burt v. Titlow*, 571 U.S. 12, 23 (2013).

Here, the state court credited trial counsel's testimony that, after receiving the Amended Information, she "would have discussed and reviewed" the maximum penalties with Sweezy. (Doc. 7-3, Ex. 38, p. 3.) "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011). Sweezy has not shown by "clear and convincing evidence" that the state court's credibility determination was erroneous. *See* 28 U.S.C. § 2254(e)(1). To the contrary, the court accurately summarized trial counsel's testimony at the evidentiary hearing. Thus, Sweezy has failed to establish that the rejection of his ineffective assistance claim rested on "an unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d)(2).

Nor has he shown that the state court unreasonably applied *Strickland* in rejecting his ineffective assistance claim. As noted above, that claim rests on the assertion that trial counsel failed to inform Sweezy of the maximum sentence he faced. The state court reasonably found that trial counsel *did* advise Sweezy of the statutory maximum penalty. Having made that factual finding, the state court correctly concluded that Sweezy failed to show deficient performance or prejudice. *See Krum v. Sec'y, Fla. Dep't of Corr.*, No. 2:13-cv-422-JES-MRM, 2016 WL 2610195, at *6 (M.D. Fla. May 6, 2016) (state court reasonably rejected ineffective assistance claim based on defense

counsel's testimony "that he properly advised Petitioner that he faced a maximum sentence of fifteen-years[] if he was convicted"). Accordingly, Sweezy is not entitled to relief on Ground Six.[4]

**Ground Seven**

Sweezy contends that trial counsel was ineffective for failing to file a pretrial motion to dismiss based on Fla. Stat. § 776.032, Florida's stand-your-ground statute. He claims that trial counsel failed to file the motion despite promising to do so, and that as a result, he was "deprived of his procedural right to a pre-trial evidentiary hearing." (Doc. 1-1, p. 9.) According to Sweezy, had a stand-your-ground motion been filed, there was a "good probability that the charges would have been found immune from prosecution." (*Id.*)

The state court denied this claim without explanation. (Doc. 7-3, Ex. 36.) Where, as here, "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562

---

[4] Sweezy appears to contend that trial counsel provided ineffective assistance by advising him not to answer the trial court's questions about whether he "understood the amount of time he was facing by rejecting the plea." (Doc. 1-1, p. 8.) Even on *de novo* review, this claim fails. During the October 26, 2015, hearing, counsel informed the court that, to protect attorney-client privilege, she would advise her client not to answer any questions from the court concerning plea offers. (Doc. 7-2, Ex. 8, pp. 6-11.) Counsel indicated, however, that the court could "ask [her] client does he understand the maximum penalties," because "the part about maximum penalties has nothing to do with attorney-client privilege." (*Id.*, p. 27.) Thus, the record refutes Sweezy's allegation. In any event, Sweezy cannot show prejudice from counsel's actions, because the court recused itself after threatening counsel with contempt, and the case was ultimately tried before a different judge. (*Id.*, pp. 35, 59.)

U.S. at 98. In this situation, "a habeas court must determine what arguments or theories . . . could have supported[] the state court's decision." *Id.* at 102.

Sweezy has not met his burden of "showing there was no reasonable basis for the state court to" reject his ineffective assistance claim. *Id.* at 98. Had Sweezy filed a stand-your-ground motion, he would have had to prove "by a preponderance of the evidence" that he was immune from prosecution.[5] *See State v. Gallo*, 76 So. 3d 407, 409 & n.2 (Fla. 2d DCA 2011). As noted above, Sweezy argued self-defense at trial, "where the state had the greater burden of showing beyond a reasonable doubt that [Sweezy] did *not* act in self-defense." *See Briner v. Sec'y, Dep't of Corr.*, No. 6:15-cv-1117-PGB-TBS, 2018 WL 560609, at *4 (M.D. Fla. Jan. 25, 2018) (citing *Fields v. State*, 988 So. 2d 1185, 1186 (Fla. 5th DCA 2008)). The prosecution met its burden at trial, and Sweezy was convicted of aggravated battery and assault. "Given that the state was able to prove beyond a reasonable doubt that [Sweezy] was not legally justified in his use of force, [he] has not met his burden of showing *Strickland* prejudice from" trial counsel's failure to file a stand-your-ground motion. *See id.* That is especially so because Sweezy "does not assert that he

---

[5] After Sweezy's trial, the Florida legislature amended the stand-your-ground statute. "In light of the 2017 amendment, a defendant is no longer required to prove that he or she acted in self-defense by a preponderance of the evidence at an immunity hearing; instead, a defendant need only make a prima facie showing at that point. To defeat the claim of immunity, the State must prove by clear and convincing evidence that the defendant did not act in self-defense." *Boston v. State*, 326 So. 3d 673, 675 (Fla. 2021).

would have presented different evidence at a pretrial evidentiary hearing than he presented at trial or that he was, in any manner, limited in arguing self-defense at trial." *See id.*; *Roberts v. Sec'y, DOC*, No. 2:18-CV-501-JES-NPM, 2021 WL 2315070, at *5 (M.D. Fla. June 7, 2021) (state court reasonably rejected *Strickland* claim based on failure to file stand-your-ground motion because petitioner raised self-defense at trial, and his "testimony failed to even raise a reasonable doubt of [his] guilt in the minds of the jurors").

Because Sweezy fails to show that the state court acted unreasonably in rejecting his ineffective assistance claim, he is not entitled to relief on Ground Seven.[6]

**Ground Eight**

Sweezy argues that trial counsel was ineffective for failing to move for a mistrial when the prosecution asked the detective whether Sweezy called 911 after the altercation. Sweezy contends that a mistrial was warranted

---

[6] In his reply, Sweezy raises two new claims: (1) the state postconviction court should have held an evidentiary hearing on his claim that counsel was ineffective for failing to file a stand-your-ground motion, and (2) his appellate counsel was ineffective for failing to argue on direct appeal that the 2017 amendment to the stand-your-ground law "should apply retroactively so as to entitle [him] to a new immunity hearing." (Doc. 12, pp. 6-8.) The Court "need not consider these new claims raised for the first time in" Sweezy's reply. *See Foreman v. Sec'y, Fla. Dep't of Corr.*, No. 3:19-cv-575-TJC-JBT, 2022 WL 3282652, at *13 (M.D. Fla. Aug. 11, 2022). In any event, the claims are meritless. As to the first claim, the Eleventh Circuit "has repeatedly held [that] defects in state collateral proceedings do not provide a basis for habeas relief." *See Carroll*, 574 F.3d at 1365 (collecting cases). As to the second claim, Sweezy never argued in state court that appellate counsel was ineffective for failing to seek retroactive application of the 2017 amendment, so any such claim is unexhausted and procedurally defaulted.

because the question "allowed the prosecutor to use [his] silence as substantive evidence of guilt." (Doc. 1-1, p. 10.) Sweezy separately contends that counsel should have objected to the question on the grounds that it improperly shifted the burden of proof to him.

The state court summarily denied this claim. It noted Sweezy's argument "that trial counsel was ineffective for failing to move for a mistrial when the State asked the Detective if [Sweezy] called 911." (Doc. 7-3, Ex. 34, p. 2.) The court also acknowledged that Sweezy "argue[d] that this was impermissible burden shifting." (*Id.*) The court indicated that it "disagree[d]" and concluded that "the question was proper." (*Id.*)

The state court did not act unreasonably in rejecting Sweezy's ineffective assistance claim. First, trial counsel was not ineffective for failing to seek a mistrial. Counsel in fact objected to the question on the grounds that it violated Sweezy's "fundamental right to remain silent."[7] (Doc. 7-2, Ex. 9, p. 338.) The court overruled the objection, explaining that the question did not "impinge[] on [Sweezy's] right to remain silent at all." (*Id.*, p. 340.) Because the court found that the question did not infringe Sweezy's right to remain silent, a motion for a mistrial premised on that argument would have been futile. Counsel cannot be deemed ineffective for failing to file a futile

---

[7] Counsel did not, however, object on the grounds that the question shifted the burden of proof to Sweezy.

motion.[8] *See McClarty v. Sec'y, Dep't of Corr.*, No. 15-15669-E, 2016 WL
10703187, at *7 (11th Cir. Sept. 7, 2016) ("[T]rial counsel was not ineffective
for failing to move for a mistrial after the trial court overruled counsel's
objections. Because the trial court determined that the evidence was
admissible, and that its prejudicial effect did not outweigh the probative
value, any motion for a mistrial would have been futile."); *Rasheed v. Smith*,
221 F. App'x 832, 836 (11th Cir. 2007) ("[T]he filing of a mistrial motion, or a
motion for severance, would have been futile and thus, counsel's decision not
to pursue this course of action was not deficient under *Strickland*.").

Second, counsel was not ineffective for failing to object that the
prosecutor's question shifted the burden of proof to Sweezy. As the state court
correctly concluded, the question did not shift the burden of proof. To be sure,
a prosecutor must refrain from asking questions "which suggest that the
defendant has an obligation to produce any evidence or to prove innocence."
*Simon*, 964 F.2d at 1086; *see also Bell v. State*, 108 So. 3d 639, 647 (Fla. 2013)
("[T]he State may not comment on a defendant's failure to mount a defense
because doing so could lead the jury to erroneously conclude that the
defendant has the burden of doing so."). Here, however, the prosecutor did
not imply that Sweezy had "an obligation to produce any evidence or to prove

---

[8] The Court would reach the same conclusion even if *de novo* review applied to this claim.

innocence." *See Simon*, 964 F.2d at 1086. Instead, the prosecutor likely meant to suggest that, if Sweezy in fact believed he had been the victim of an unprovoked knife attack, he would have reported it to the police. Pointing this out to the jury did not shift the burden of proof to Sweezy. *See Hamilton v. State*, 351 So. 3d 1275, 1279 (Fla. 2d DCA 2022) (rejecting defendant's argument that the prosecutor shifted the burden of proof to her by "mentioning that she did not call law enforcement after she shot [the victim]").

In short, Sweezy has failed to establish that the state court's ruling involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Thus, he is not entitled to relief on Ground Eight.

**Ground Nine**

Sweezy argues that trial counsel was ineffective for failing to object when the prosecutor asked him on cross-examination (1) whether he had receipts to corroborate his claim that he purchased items at the Dollar General store after the altercation, and (2) whether he had phone records to support his assertion that Kolk responded to his emails by calling him. According to Sweezy, counsel should have objected to these questions on the grounds that they shifted the burden of proof to him.

The state court denied this claim without explanation. (Doc. 7-3, Ex. 36.) Thus, Sweezy must show that "there was no reasonable basis for the state court to deny relief." *See Richter*, 562 U.S. at 98. The Court "must determine what arguments or theories . . . could have supported[] the state court's decision." *Id.* at 102.

Sweezy has not met his burden of "showing there was no reasonable basis for the state court to" reject his ineffective assistance claim. *Id.* at 98. Sweezy is correct that counsel did not object to the questions during cross-examination. After the defense rested, however, counsel raised her "concern[]" that the prosecution's questions amounted to "burden shifting":

> [COUNSEL]: Your Honor, I do have one additional matter. During Mr. Sweezy's testimony it seemed like the prosecutor was insinuating that Mr. Sweezy had some duty or some burden to produce documents that would be consistent with his testimony.
>
> And I have some concerns that that is burden shifting and I am just really concerned that any burden shifting arguments not exist in closing argument.
>
> I mean especially in light of these cases, you know, these cases talk about the burden even in a self-defense case never moves from the State.
>
> So I just want, I just want to put everyone on notice that I'm just a little concerned.

(Doc. 7-2, Ex. 9, pp. 487-88.)

The court asked the prosecutor whether he "hear[d] that?" (*Id.*, p. 488.) The prosecutor said he did. The court then stated that "we shouldn't have a

problem" "if everyone plays according to the rules with regard to what can and can't be argued, what can and can't be said, what kind of inferences can or can't be drawn, what references can be made to what's in evidence or not, what's speculation versus inference." (*Id.*, pp. 488-89.) During closing argument, the prosecution did not refer to Sweezy's failure to produce corroborating physical evidence. (*Id.*, pp. 505-17; 536-43.)

Faced with this evidence, the state court could reasonably have concluded that counsel made "a calculated strategic decision" to refrain from objecting to the questions until after cross-examination. *See Waters v. Thomas*, 46 F.3d 1506, 1519 (11th Cir. 1995). Had counsel objected during the examination, she might have drawn attention to Sweezy's failure to produce corroborating evidence. *See Insignares*, 755 F.3d at 1284 ("[T]here are many reasons why defense counsel might not object to [an improper] statement, including [that] the objection may draw attention to the statement."). Instead of objecting, counsel waited until the jury was excused, then sought to ensure that the prosecution did not make any burden-shifting statements during closing argument. The Court cannot say that "no competent counsel would have taken the action that [Sweezy's] counsel did take." *See Zakrzewski v. McDonough*, 455 F.3d 1254, 1258 (11th Cir. 2006). Because counsel acted within "the wide range of professionally competent assistance," the state court reasonably rejected Sweezy's ineffective

assistance claim, and he is not entitled to relief on Ground Nine. *See Strickland*, 466 U.S. at 690.[9]

**Ground Ten**

Finally, Sweezy contends that the cumulative effect of trial counsel's alleged errors deprived him of the effective assistance of counsel. A cumulative-error claim "must fail" where none of the "individual claims of error" has "any merit." *Morris*, 677 F.3d at 1132. Because none of the ineffective-assistance claims has merit, there are no individual errors to accumulate, and Sweezy's cumulative-error claim fails.[10]

Accordingly, it is **ORDERED** that Sweezy's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Sweezy and to **CLOSE** this case.

It is further **ORDERED** that Sweezy is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C.

---

[9] Sweezy contends that the state postconviction court erred in failing to grant him an evidentiary hearing on this claim. As explained above, however, "defects in state collateral proceedings do not provide a basis for habeas relief." *Carroll*, 574 F.3d at 1365.

[10] Sweezy seeks an evidentiary hearing on his claims. An evidentiary hearing is not warranted. *See Schriro*, 550 U.S. at 474 (stating that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing"); *Landers v. Warden*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record.").

§ 2253(c)(1). Rather, a court must first issue a certificate of appealability. To obtain a certificate of appealability, Sweezy must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Sweezy has not made the requisite showing. Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Sweezy must obtain permission from the circuit court to appeal *in forma pauperis*.

     **DONE and ORDERED** in Tampa, Florida, this 4th day of May, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**